W. A. YANDELL, Plaintiff,

v.

WHITE CITY AMUSEMENT PARK,
INC., Defendant.

Civ. A. No. 60-527.

United States District Court
D. Massachusetts.

June 30, 1964.

Jerome P. Facher, Hale & Dorr, Boston, Mass., for plaintiff.

Arthur Wasserman, Boston, Mass., for defendants.

JULIAN, District Judge.

On August 1, 1960, at 2:15 p. m., the Commerce Bank and Trust Co. of Worcester, Massachusetts, was summoned as a trustee in a suit commenced by W. A. Yandell and Jack Love against White City Amusement Park, Inc. On August 3, 1960, the alleged trustee answered under oath that it had on deposit in the name of White City Amusement Park, Inc., $246.60 (Mass.G.L. c. 246, §§ 10, 11), which amount comprised $84.68 in the White City regular account, $142.70 in the White City tax account, $19.22 in the White City special account. On January 8, 1963, the defendant corporation, not appearing for trial, was defaulted.

Mass.G.L. c. 246, § 16, provides: "The answer and statements of a trustee, on oath, shall be considered as true in determining how far he is chargeable; but either party may allege and prove any facts material in determining such question and not stated or denied by the trustee."

On February 20, 1963, under the provisions of this section the plaintiff filed "Additional Allegations Not Stated or Denied by Trustee and Plaintiff's Motion to Charge Trustee to the Full Extent of Its Liability." The most important part of those allegations contains the following:

"As of the close of business on Friday, July 29, 1960, and the opening of business on Monday, August 1, 1960, the trustee bank showed approximately $15,800 as the balance of the Defendant's accounts. On August 1, 1960, aproximately $88,000 was credited to the General Ogelthorpe Hotel Corp. account whose funds were interchangeably used to cover checks or obligations of the Defendant. On August 1, 1960, a trustee writ was served on the trustee bank attaching the goods and effects and credits of the Defendant in the possession of the said trustee. On August 1, 1960, approximately $88,000 in checks and $7,000 in debit memoranda were charged by the trustee against the Defendant's account and such checks and debits were cleared. On August 1, 1960,

approximately $88,000 in checks and debit memoranda were charged against the General Ogelthorpe Hotel Corp. account, and approximately the same total amount was credited the account."

The Court was of the opinion that these allegations qualified as material facts not stated or denied by the trustee within the meaning of Mass.G.L. c. 246, § 16.

The trustee, without moving for leave to further answer, filed further answers to these allegations, insisting that under Mass.G.L. c. 246, § 16, these further answers had to be considered as true so as to preclude the plaintiff from contradicting them.

The Court refused to allow the trustee to further answer, Hovey v. Crane, 29 Mass. (12 Pick.) 166 (1831); Carrique v. Sidebottom, 44 Mass. (3 Metc.) 297 (1841); Collins v. Smith, 78 Mass. (12 Gray) 431 (1859); Winsted Bank v. Adams, 97 Mass. (1 Browne) 110 (1867), and ordered that the factual questions arising upon the plaintiff's additional allegations not stated or denied by the trustee be tried to and determined by the Court without a jury. (Mass.G.L. c. 246, § 17.)

Simply put, the issue is, what credits of the White City Amusement Park, Inc., did the trustee have when it was served with the writ?

### Findings of Fact

1. The trustee writ was served on the Commerce Bank and Trust Company on August 1, 1960, at 2:15 p.m. The sum of $80,000 which was transferred to the White City regular account from the General Ogelthorpe Hotel Corp. account (Exh. 13B) did not become a credit to the General Ogelthorpe account until 4:10 p.m. on August 1, 1960 (Exh. 13D and affidavit of O'Brien), almost two hours after the trustee writ was served on the bank.

2. The three deposits to the White City special account, $434.12 (Exh. 19A), $165.13 (Exh. 19B), $1,718.85 (Exh. 19C), were not in the possession of the trustee bank at 2:15 p.m. on August 1, 1960, but were in fact not deposited with the bank until after the writ was served.

3. The parties have stipulated that

(a) The trustee was authorized by White City Amusement Park, Inc., to transfer funds from White City Amusement Park, Inc. special or regular accounts to an account known as the General Ogelthorpe Hotel Corp. account for the purpose of honoring checks drawn on the General Ogelthorpe Hotel Corp. account. In accordance with this authorization, transfers for this purpose were made from White City Amusement Park, Inc. regular and special accounts to the General Ogelthorpe Hotel Corp. account.

(b) Funds to the credit of the General Ogelthorpe Hotel Corp. account were used by the trustee in accordance with authorization given by the General Ogelthorpe Hotel Corp. to honor checks which were drawn by White City Amusement Park, Inc., against its regular and special accounts with the trustee.

4. The plaintiff made no showing that these two corporations, despite the authorization to transfer funds one to the other, were not separate entities. Nor does he claim that the use of the two accounts was for the purpose of defeating any attachment of the White City account.

5. Both the White City accounts and the General Ogelthorpe account were very active, with large sums of money deposited and withdrawn daily. There were frequent overdrafts in the White City accounts. Both the White City and General Ogelthorpe accounts were troublesome and were closely scrutinized by bank personnel.

6. The trustee bank was on a deferred posting basis, by which transactions

would not be machine posted to the ledger cards until the day after their actual occurrence. This procedure was followed except for the last business day of the month when, except for "outs" that could not be posted, all transactions for that day were machine posted on that same day to bring all accounts up to date where possible.

7. "Outs" were items (checks) that were not machine posted in the normal process by a bookkeeping machine operator but were set aside so that the head bookkeeper or an officer could make a decision to pay or not to pay. An item which became an "out" late on the last business day of the month might not be posted on that day.

8. Transactions not machine posted on the last business day were, in effect, made "first business day of the month" transactions which would be posted on the second business day of the month as of the first business day. There was no posting on the first business day of the month to reflect the last business day of the month transactions.

9. On July 29, 1960,[1] the trustee bank transferred $6,900 from the White City regular account to the General Ogelthorpe account in accordance with the authorization given to the bank. The purpose of the transfer was to cover two series of checks drawn against the General Ogelthorpe account which did not have sufficient funds to cover the checks. The two series of checks are Exhibits 12A totaling $2,922.90, and 12B totaling $5,232.56, which appear on the list of "outs" (Exh. 16) for July 29, 1960. Therefore, the $6,900 was not standing to the credit of the White City Amusement Park, Inc., when the writ was served.

10. On July 29, 1960, the trustee bank received four checks (Exh. 9B) totaling $7,998.75 from the Federal Reserve Bank (Exh. 15) for payment, which were drawn on the White City regular account. These checks were not machine posted but were withdrawn from that process on that day and became "outs" (Exh. 16). An authorized officer of the bank examined the ledger card to determine if there were sufficient funds in it to pay those items. The officer made a penciled notation in the amount of $7,998.75 next to the then current balance, which notation indicated that that amount was committed to the payment of the four checks. Those checks were then hand-stamped by an authorized officer of the bank with a symbol consisting of three concentric circles, referred to as a "bull's-eye," and initialed by him, which, in accordance with procedure followed by the bank, manifested the bank's decision to pay the items on the date of the stamping, July 29, 1960.[2] Since these actions came too late in the day, the machine posting of this transaction did not occur until August 2 in accordance with the bank's deferred posting procedure.

## Conclusions of Law

1. The Court has jurisdiction over these proceedings (see Fed.Rules Civ. Proc. rule 64), and the law of Massachusetts is applicable.

2. Massachusetts General Laws, chapter 106, section 4–303, provides:

"(1) Any * * * legal process served upon * * * a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if the * * * legal

---

1. Despite the fact that the debit memo transferring the $6,900 was dated August 1, 1960 (Exh. 9A), the Court finds as a fact that this memo was actually made on July 29, 1960, and dated August 1, so that it would correspond with the date that would later be placed on the ledger card.

2. July 29, 1960, fell on a Friday and was the last business day of the month.

process is \* \* \* served
\* \* \* after the bank has
\* \* \*

\* \* \* \* \*

"(d) \* \* \* evidenced by examination of such indicated account and by action its decision to pay the item."

3. By an examination of the ledger card of the White City regular account, by penciling the notation on the ledger card, and by stamping and initialing the "bull's-eye" on each check (Finding 10, supra) the bank had evidenced its decision to pay the checks totaling $7,998.75 on July 29, 1960.

4. Taking the plain meaning of Mass.

4. Taking the plain meaning of Mass.G.L. c. 106, § 4–303(1) (d), it is clear that the trustee writ was served after the bank had made and manifested its decision to pay the checks. The trustee writ, therefore, was served too late to terminate or suspend the bank's right and duty to charge the amount of $7,998.-75 to the White City regular account.

See Nineteenth Ward Bank v. First National Bank of South Weymouth, 184 Mass. 49, 67 N.E. 670 (1903); Clarke, Bailey and Young, Bank Deposits and Collections (under the Uniform Commercial Code) pp. 80–83, 1959; Brady on Bank Checks, p. 289 (3d Ed. Bailey 1962).

5. As to the $80,000 (Finding 1, supra), the $434.12, $165.13 and $1-718.85 (Finding 2, supra), and the $6,900 (Finding 9, supra), these amounts were not credits of the White City Amusement Park, Inc., at the time of service of the trustee's writ and so were not reached by it.

6. At the time of the service of the writ upon the trustee, it had in its possession credits of the defendant in the amount of $246.60, as stated in the trustee's answer. The trustee is therefore charged in that amount.