Jeannette **JOLER** and Jerome G. Daviau

v.

**DEPOSITORS TRUST COMPANY.**

Supreme Judicial Court of Maine.

Oct. 3, 1973.

Daviau, Geller & Daviau, by Jerome G. Daviau, Waterville, for plaintiffs.

Locke, Campbell & Chapman, by Frank G. Chapman, Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

Louis N. Ware of Winslow, Maine died on March 6, 1968. Plaintiff, Jeannette Joler, is a beneficiary under his will. Plaintiff, Jerome G. Daviau, was named in the will as executor and qualified on June 21, 1968.

Not later than April 2, 1968 a proof of claim (dated March 25, 1968) was filed by defendant bank, Depositors Trust Company, in the Kennebec County Registry of Probate against the estate of decedent, Ware. It disclosed a $410.00 indebtedness due from him to defendant, evidenced by a promissory note executed by decedent on December 13, 1967 payable ninety days thereafter.

Even though the indebtedness had matured by the time the proof of claim was filed, defendant never "commenced and served within 12 months after . . . [the] qualification . . ." of the executor a civil action against the executor—thus to avoid the bar, established by 18 M.R.S.A. § 2651, against maintenance of an action later commenced.

Approximately three years after his qualification plaintiff-executor, on May 28, 1971, sent one of his employees to a branch of defendant in Winslow to close out two separate accounts of decedent—one a savings account containing $3,759.37 (as constituted by a principal balance, on May 1, 1967, of $3,325.94 plus interest accumulated to the date of decedent's death) and the second a non-interest bearing checking account in the amount of $1,109.07. Plaintiff-executor had earlier informed the branch manager that he was planning to close out the accounts and, thus alerted, the manager had checked the records of the decedent's financial status with the bank and ascertained the existence of the unpaid debt.

When the employee of plaintiff-executor appeared at the bank and was in process of losing out the accounts, the branch manager (already advised by counsel) placed a telephone call to the plaintiff-executor. He told him that defendant bank proposed to deduct $410.00 in payment of the outstanding indebtedness and requested plaintiff-executor to approve it. Plaintiff-executor not only refused to consent to the deduction but vigorously denied the right of defendant bank to make it or in any manner to be repaid the $410.00. After fur-

ther discussion between plaintiff-executor and the branch manager, it eventuated that defendant bank paid no money from either of the two accounts to plaintiff-executor.

On June 9, 1971 the plaintiffs commenced the instant civil action in the Superior Court of Kennebec County.

In one of two counts the complaint alleged that, as a beneficiary under the will of Louis N. Ware, the plaintiff, Jeannette Joler, had requested payment of her legacy and plaintiff-executor had sought to obtain the funds needed to honor her request by closing out the accounts of decedent with defendant bank. The complaint alleged that (1) a demand had been made upon the defendant bank for the amounts of both deposits and any interest accrued, the demand being accompanied

"by letters and orders and a copy of . . . [the plaintiff-executor's] appointment, together with the submission of the deposit book, . . ."

and (2) defendant had refused to pay the money in "either or both of said accounts", requiring as the precondition of the payment of any money whatever that plaintiff-executor write a letter assuring payment of the bank's $410.00 claim in full. Characterizing defendant's refusal to pay as an attempt to achieve a pecuniary advantage to which the bank was not legally entitled, tantamount to "extortion" constituting a "prima facie tort", plaintiffs claimed damages both compensatory and punitive.

In a second count which realleged all of the paragraphs of the first count descriptive of the conduct of the parties, plaintiffs asserted ultimate conclusory characterizations that defendant had committed a "breach of statutory obligation" and had acted with "gross negligence" towards plaintiffs. Plaintiffs again claimed entitlement to both compensatory and punitive damages.

Defendant filed an answer denying liability. Additionally, defendant pleaded, in the form of a "permissive counterclaim" (pursuant to Rule 13(b) and (c) M.R.C.P.), that there was

"an outstanding unpaid principal balance of $410.00 . . . as a counterclaim to demands of plaintiff",

evidenced by a promissory note. By the "counterclaim" pleading, defendant sought court adjudication that defendant was legally entitled to repayment of the $410.00 due it from the decedent, Ware. Concomitantly with the filing of its answer and counterclaim defendant delivered to the Clerk of the Superior Court its check in the amount of $4,458.44 (this amount being $410.00 less than the total of the balances of the two accounts), together with the promissory note which had been executed by decedent.

Plaintiffs filed a reply to the counterclaim averring that defendant's delivery into Court of its check in the amount of $4,458.44 is "improper and legally impermissible" because: (1) plaintiffs' claim in this action is " . . . not in any way [a] claim [for] the money on deposit belonging to Plaintiffs' intestate" and (2) hence, "the court has no jurisdiction to order that any sum be paid over to the Plaintiff[s], so far as the deposits are concerned."

The pleadings were subsequently supplemented with answers of defendant to interrogatories propounded by plaintiffs, affidavits, depositions and various exhibits.

On August 30, 1971 plaintiffs moved for summary judgment in their favor. On September 2, 1971, defendant moved for a summary judgment that the action of plaintiffs be dismissed. On January 4, 1972 the Justice presiding in the Superior Court ruled that defendant was legally entitled to repayment of the $410.00 owed it by decedent, Ware, and plaintiffs should have the balance of $4,458.44 remaining in the two accounts. On this rationale the presiding Justice denied the motion of the plaintiffs for summary judgment in their favor, granted defendant's motion for sum-

mary judgment and ordered the action of plaintiffs dismissed.

Plaintiffs have appealed from the judgment of dismissal of their action.

We sustain the appeal.

■ Widely accepted, as embodying the application of conceptions of equity and fairness to the basic creditor-debtor relationship established when a person makes general deposits in a bank, is the principle:

> "When . . . [the depositor] owes to the bank independent debts, already due and payable, the bank has the right to apply the balance of his general account to the satisfaction of any such debts of his." National Mahaiwe Bank v. Peck, 127 Mass. 298, 300, 301 (1879)

Also: Krinsky v. Pilgrim Trust Company, 337 Mass. 401, 149 N.E.2d 665 (1958); Kress v. Central Trust Company of Rochester, 272 N.Y. 629, 5 N.E.2d 365 (1936); American Lumberman's Mutual Casualty Company of Illinois v. Bradley Construction Company, 129 N.J.Eq. 278, 19 A.2d 242 (1941); Joseph v. Carter, 382 Ill. 461, 47 N.E.2d 471 (1943); Melson v. Bank of New Mexico, 65 N.M. 70, 332 P.2d 472 (1958); Adelstein v. Jefferson Bank & Trust Company, Mo., 377 S.W.2d 247 (1964); and Sharpe v. Metropolitan National Bank, Colo.App., 503 P.2d 1043 (1972).

We hold this principle governing law in Maine subject to statutory modifications introduced by enactment of the Uniform Commercial Code—specifically, the provisions of 11 M.R.S.A. § 4-303(1)(a)–(e).

When, therefore, defendant bank proposed to deduct the $410.00 amount owed it by decedent, Ware, it was purporting to exercise the legal right of "self-help" ordinarily available to it, as above delineated, consistently with a limitation defendant might have conceived to be imposed by 11 M.R.S.A. § 4-303(1)(b)—that the bank's "set-off" might come "too late" were it to be

> " . . . exercised after the bank has . . . paid the item in cash . . . ."

■ The present situation, however, involved the further special facts that the depositor had died and, in the course of the administration of the estate, defendant, although having filed a timely proof of claim, had omitted to institute against the executor within the twelve months period prescribed by 18 M.R.S.A. § 2651 a civil action to obtain a court judgment. The question is thus precipitated whether these special facts rendered here inapplicable the usually existing right of defendant bank to apply the deposits to the matured debt owing to it by the depositor.

In Littlefield v. Eaton, 74 Me. 516 (1883), after cataloging various consequences produced by the operation of the statute barring maintenance of actions against executors or administrators to recover on debts due from decedents, this Court observed that the statute

> "has been considered to be . . . a *practical extinquishment* of claims not prosecuted within the time limited; . . . ." (pp. 519, 520) (emphasis supplied)

The care taken to characterize the "extinguishment" as "practical" is a recognition, precisely, that conceptually the debt is not truly "extinguished." Although the legal vitality of the indebtedness due from a decedent may be sharply attenuated for most practice enforcement purposes after expiration of the statutory period for commencing an action against the executor or administrator, it nevertheless remains theoretically possible that in rare situations, and by particular means, satisfaction of such indebtedness may be lawfully achieved notwithstanding a lack of consent by the personal representative.

We decide that the context now before us presents one such rare occasion, and particular methodology, for lawful satisfaction of the indebtedness owed defendant by the decedent regardless of a lack of

consent by his personal representative and the failure of the creditor to comply with the time limitations of 18 M.R.S.A. § 2651.

The provisions of 18 M.R.S.A. § 2651 are directed explicitly to whether an

" . . . *action* . . . [may] be *maintained* against an *executor* . . . ." (emphasis supplied)

Because the theoretical right here asserted by defendant encompasses as lawful defendant bank's own "self-help" act of applying general deposits under its control in satisfaction of the indebtedness due from the decedent, defendant was without need to invoke the assistance of a court— by a civil action, original or in the nature of a "counterclaim" pleading,—to achieve a judgment as the instrumentality to enforce payment of the debt from assets of the debtor. Hence, the enforcement procedure with which 18 M.R.S.A. § 2651 is concerned is without literal effect to preclude defendant's use of its right of "self-help." Cf. Gonsalves v. Bank of America National Trust & Savings Association, 16 Cal.2d 169, 105 P.2d 118 (1940).

Further, a holding that 18 M.R.S.A. § 2651 is inapplicable to the present circumstances remains consistent with the general policy sought to be promoted by the statute —the avoidance of undue delay in the settlement of the estates of deceased persons. First, by an appropriate proof of claim timely filed defendant had notified the executor of the existence and the amount of the indebtedness and had thus provided the executor opportunity to arrange for early satisfaction of the indebtedness. Second, it is inherent in the nature of the bank's right of "self-help" that the availability of an authority to exercise the right after the expiration of the statutory period for commencement of suits against the personal representative cannot be an independent source of delay in the administration of an estate. The indispensable precondition of the bank's right of "self-help" is that the bank must still have the decedent's deposits in its hands. This precondition will exist in fact after the expiration of the statutory period for commencement of suits against the personal representative only because the personal representative will have allowed it by a failure earlier to have marshalled the decedent's accounts as assets for administrative disposition. Any delay in the administration of the estate, therefore, incident to the bank's exercise of its right of "self-help" subsequent to the expiration of the twelve months statutory period, will have been independently in existence, as caused by the default of the executor; and the delay will in no respect be attributable to the availability to the bank of a continuing right to use "self-help" to repay itself from such deposits of the decedent as remain in its hands.

Despite its failure to institute suit within the twelve month period designed in 18 M.R.S.A. § 2651 to recover the indebtedness due it from decedent, Ware, defendant bank had a right by its own act to apply in satisfaction of such indebtedness the general deposits in the "Ware" accounts which still remained in the bank's hands. That defendant bank, instead of immediately asserting such continuing legal right in its fullest unilateral scope, sought initially (whether motivated by a desire to be courteous or for other reasons) to have the acquiescence and bi-lateral participation of plaintiff-executor did not cause a forfeiture of defendant's legal right unilaterally to exercise "self-help." Further, that defendant, upon plaintiff-executor's refusal to acquiesce or participate, did not thereupon deduct the $410.00 amount of indebtedness from the accounts and tender the balance to plaintiff-executor but elected to wait until plaintiffs had instituted court action is likewise without legal significance to terminate defendant's right of "self-help."

■ The presiding Justice was thus correct in that portion of his adjudication which recognized that defendant bank had acted within its legal rights in repaying itself, after plaintiffs had commenced their suit, the $410.00 indebtedness due it from

the decedent, Ware,—as defendant bank had in fact done when it satisfied the indebtedness by delivering to the Clerk of Court both the note executed by decedent, Ware, and the check of defendant bank for an amount $410.00 less than the total of the deposits in the two accounts.[1]

From this it fails to follow, however, that the presiding Justice was also correct in sustaining defendant's motion for summary judgment dismissing the action of plaintiffs.

The presiding Justice accompanied his dismissal of the action with the further directive that (1) plaintiffs should have

> "the balance of $4,458.44 now on deposit with the Clerk of this Court after first delivering to said Clerk the bank books representing said accounts and duly executed releases . . . plaintiffs . . . [being] entitled to the . . . note thereafter";

and (2)

> "after compliance with all of the foregoing this suit shall terminate with prejudice and without costs awarded to either party."

By adopting such position, the presiding Justice revealed that he agreed with the contention of defendant bank that, stripped of all ultimate conclusory legal characterizations, the complaint of plaintiffs could encompass a valid cause of action only insofar as it was treated as a claim for the monies lawfully due plaintiffs from the "Ware" accounts in defendant bank.

■ Such view is erroneous. It overlooks the applicability of 11 M.R.S.A. § 4–402:

> "A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When

---

1. In thus deciding, we emphasize that we do not here confront issues which could arise were defendant not in a position to use "self-help" to repay itself by deposits in its hands but were obliged to seek a court judgment as the means to reach and apply assets of the debtor in payment of the indebtedness.

Were a court judgment necessary, defendant would be barred by 18 M.R.S.A. § 2651 from maintaining an original action to recover the indebtedness since its commencement would be outside the permissible time limits. An effort to achieve a judgment by resort to a "permissive counterclaim" pleading, would precipitate the problem of the substantive scope of 14 M.R.S.A. § 5902—authorizing that "(d)emands against a person belonging to a defendant at the time of the death of such person may be asserted by counterclaim against claims prosecuted by his executor or administrator." As shown by the decision in Adams v. Ware, 33 Me. 228 (1857), even if the substantive right (regardless of the manner of the pleading) contemplated by 14 M.R.S.A. § 5902 encompasses claims not transactionally related, mutuality must exist —at least to the extent that the cause of action being prosecuted by an executor or administrator, and against which defendant is asserting a claim, must have been owned by the decedent prior to his death. Here, the cause of action alleged by plaintiffs in their complaint did not seek payment of the bank accounts due the decedent, Ware, but concerned new matters occurring after his death

and which, as explained more fully hereinafter, related to a special statutory cause of action for damages encompassing items other than the amounts of deposits in the accounts. It would be highly questionable, therefore, whether 14 M.R.S.A. § 5902 would be applicable to allow defendant a judgment under its "permissive counterclaim" pleading.

A similar impediment could face an attempt of defendant to make specially applicable (to override the time limits of 18 M.R.S.A. § 2651) the provisions of 14 M.R.S.A. § 865— by which matters ". . . arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim to the extent of the demand in the plaintiff's claim" are to have "(t)he time of . . . limitation . . . computed as if an action had been commenced therefor at the time the plaintiff's action was commenced." Since the claim of defendant arose from dealings with the deceased, Ware, during his lifetime, and the cause of action alleged by plaintiffs concerns conduct occurring after death, affects persons other than decedent, Ware, and includes items of damages other than the monies on deposit in the "Ware" accounts, it would be doubtful that defendant's claim could be properly classifiable as ". . . arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim . . . ." (See: Field, McKusick & Wroth, Maine Civil Practice, 2d Ed., Section 13.8a at pp. 279, 280)

the dishonor occurs through mistake, liability is limited to actual damages proved. If so proximately caused and proved, damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case."

Here, there are allegations in the complaint and evidence of record sufficient to yield the conclusion that an "instrument" drawn against the savings account[2] had been "presented" and "wrongfully dishonored" by defendant bank within the meanings of the provisions of 11 M.R.S.A. §§ 3–102, 3–104, 3–504 and 3–507,—thus to give rise to a cause of action under 11 M.R.S.A. § 4–402.

The checking account was separate and distinct from the savings account. The checking account contained deposits of $1,109.07, an amount plainly sufficient to cover the $410.00 indebtedness due to the bank. Yet, as revealed by the record, (1) defendant had imposed its own independent condition that no payment would be made from either the savings account or the checking account unless plaintiff-executor gave written assurance that the $410.00 would be paid and (2) when plaintiff-executor declined to comply with this condition, defendant refused to pay over the monies in the savings account pursuant to the order of the instrument drawn against that account. On such facts the cause of action delineated in 11 M.R.S.A. § 4–402 was brought into play.

Since this statutory cause of action explicitly comprehends the remedial right to a recovery of "damages proximately caused by the wrongful dishonor of an item", including any "consequential dam-ages" which are "proved" to have been "proximately caused", plaintiffs could not properly be limited to a recovery of only the amounts remaining legally due them from the deposits in the accounts. Regardless, therefore, that the full amount legally due the plaintiffs upon the deposits in the two accounts had been paid into Court by defendant bank, the plaintiffs were entitled to the opportunity to prove the existence of other damages, including consequential damages, proximately caused by the conduct of the bank. The dismissal of the action of plaintiffs denied plaintiffs such opportunity and was, therefore, reversible error.

The entry is:

Appeal sustained.

WEBBER, J., sat at argument but retired before the decision was rendered.

POMEROY, J., did not sit.

All Justices concurring.

2. The "instrument" herein referred to is the order appearing in the record as follows:

"DEPOSITORS TRUST COMPANY
WINSLOW, MAINE
May 2, 1971
Pay to the order of Jerome Daviau Executor of the will of Louis Ware the sum of $3759.37 dollars and charge to the savings account #66
Witness:

s/ Jerome G. Daviau
Jerome G. Daviau, Executor of the Estate of Louis Ware"