ROBERT S. RAYMER, assignee, vs. BAY STATE NATIONAL BANK.

Essex. April 9, 1981. — August 7, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & NOLAN, JJ.

*Uniform Commercial Code*, Dishonor, Damages, Bank. *Negotiable Instruments*, Dishonor. *Consumer Protection*, Attorney's fees, Bank. *Damages*, Wrongful dishonor of check, Attorney's fees.

When a company became a debtor in possession under c. 11 of the Bankruptcy Act, it had all the powers of a trustee in bankruptcy and could properly assign its claims against a bank for wrongful dishonor of checks under G. L. c. 106, § 4-402, and for unfair and deceptive acts and practices under c. 93A, § 11; the company's failure to list the claims as assets in the bankruptcy proceeding did not invalidate its assignment of the claims where the bank did not seek to have the plan of arrangement set aside within six months after it was confirmed, nor was the assignment invalid because the company failed to assert the claims as counterclaims in the bank's turnover proceeding. [314-315]

A bank's exercise of its right to set off the balance of a company's revolving loan against the company's deposit came too late under G. L. c. 106, § 4-303 (1) (*e*), to terminate its duty to honor certain checks drawn on the deposit where the bank had become "accountable for the amount of the item[s]" under §§ 4-213 (1) (*d*) and 4-302 before it had exercised the set-off. [315-316]

In an action against a bank for wrongful dishonor of a company's checks, there was sufficient evidence to warrant the judge's finding that the bank's exercise of its right to set off the balance of the company's revolving loan against the company's deposit came too late under G. L. c. 106, § 4-303 (1) (*d*), to terminate its duty to honor certain of the checks because the bank had "completed the process of posting" the items to the company's account and had "evidenced by examination of such indicated account and by action its decision to pay the item." [316-317]

In an action against a bank for wrongful dishonor of a company's checks, the judge erred in awarding the plaintiff damages in the face amount of the dishonored checks where the company did not suffer any actual loss and where the company's alleged consequential damages were not proximately caused by the wrongful dishonor as required for recovery under G. L. c. 106, § 4-402. [317-318]

The provisions of G. L. c. 93A are applicable to banks. [318-319]

In an action against a bank for unfair and deceptive acts and practices under G. L. c. 93A, § 11, the plaintiff was not entitled to multiple 'damages where a finding was warranted that the bank's violation of c. 93A, § 2, was not "willful or knowing." [319]

On a judge's finding that a bank had violated G. L. c. 93A, § 2, in wrongfully dishonoring certain checks, the plaintiff was entitled to an award of attorney's fees even though the plaintiff had proved no actual damages. [319-320]

CIVIL ACTION commenced in the Superior Court on July 19, 1977.

The case was heard by *Mitchell, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Joseph P. Donahue, Jr. (Arthur C. Sullivan, Jr.,* with him) for the defendant.

*Avram G. Hammer* for the plaintiff.

*Jerome E. Andrews, Jr., Mark A. Michelson & John N. Garner,* for Boston Clearing House Association, amicus curiae, submitted a brief.

BRAUCHER, J. The plaintiff Raymer, as assignee of Raymer Products Corp. (company), brought this action against the defendant bank for damages for the wrongful dishonor of twenty-six checks, under the Uniform Commercial Code (UCC), G. L. c. 106, § 4-402, and for unfair and deceptive acts and practices under G. L. c. 93A, § 11. A judge of the Superior Court, sitting without a jury, awarded the plaintiff $36,463.73, the face amount of the dishonored checks, plus attorneys' fees and costs. Both parties appealed, and we transferred the case to this court on our own motion. We reverse the judgment and order the entry of judgment for the plaintiff for nominal damages plus attorneys' fees and costs.

We summarize the judge's findings of fact. Raymer was the president and principal shareholder of the company. The company became a customer of the bank in 1972, maintained a commercial checking account with the bank,

and became indebted to the bank on three separate loans: (1) a real estate mortgage loan guaranteed by the Small Business Administration (SBA), (2) a second SBA-guaranteed loan secured by machinery, and (3) a "revolving" loan secured by accounts receivable and inventory. The first two were being repaid by monthly payments of principal and interest, and the revolving loan was maintained at varying levels, with interest payable monthly. The company did not miss any payments due. In the winter of 1975-1976 the company notified the bank that it expected an operating loss due to raw material shortages created by the oil embargo and to the bankruptcy of one of its customers. About May 23, 1976, after submission of the company's quarterly report, Raymer met with the bank's loan officer; they reviewed steps to be taken to restore profitable operations, to which the loan officer agreed. In June, 1976, a second loan officer took over the company's accounts, and he wanted further security. The balance on the revolving loan was then $229,000, and it was secured by more than $245,000 in accounts and more than $250,000 in inventory. The second loan officer was told to expect a loss of $15,000 for May and June, but an interim report showed a loss of less than $5,000. For the fiscal year ending April 30, 1976, the company had a net operating loss of some $122,000 on net sales of $1.7 million; for the three months ending July 31, 1976, the loss was $96,350.

On July 15, 1976, the second loan officer went to the company's plant and explained to Raymer that a separate account would be established the following week for the deposit of accounts receivable; until then the company should make deposits and pay bills as it normally would. Twenty-six checks drawn by the company before July 16, 1976, totalling $36,463.73, were presented to the bank, thirteen on Friday, July 16, and thirteen on Monday, July 19. The company's account contained sufficient available funds, and the twenty-six checks were "posted" by the bank's usual procedure then in force before 6 A.M. of the banking day following the day of receipt. On Tuesday, July 20,

1976, representatives of the company and the bank met at the bank at 3 P.M. to go over the company's earnings projections. Unknown to the company representatives, while the meeting was going on the bank's loan officer was at the company's plant taking possession of all its property. Later that day the bank returned all twenty-six checks for "uncollected funds," crediting the company's account and setting off some $78,000 of the revolving loan.

The company filed a petition under c. 11 of the Bankruptcy Act on August 10, 1976, and completed the petition on September 24, 1976. The bank had begun a proceeding in the United States Bankruptcy Court to compel the turnover of accounts receivable, and the company filed an answer but no counterclaim. The present claims were not scheduled as assets in the bankruptcy proceeding. A plan of arrangement was filed in December, 1976, and confirmed January 28, 1977; final decree was entered in May, 1977. On February 4, 1977, the company assigned the present claims to Raymer, and this action was begun on July 19, 1977.

The judge ruled that the company's claims were assignable and were not barred by what took place in the Bankruptcy Court, that the bank's set-off came too late under G. L. c. 106, §§ 4-303, and 4-109, and that the plaintiff could recover the face amount of the checks under G. L. c. 106, § 4-402, as damages proximately caused by wrongful dishonor. He further ruled that the set-off was an unfair act or practice in violation of G. L. c. 93A, § 2, and awarded the plaintiff attorneys' fees under G. L. c. 93A, § 11. On the bank's appeal, it contests each of these rulings. On the plaintiff's appeal, he attacks the following rulings: that the plaintiff failed to show additional damages having the requisite causal connection under § 4-402, and that the plaintiff was not entitled to multiple damages under G. L. c. 93A, § 11. Except for the award of damages in the face amount of the checks, we uphold the actions taken by the judge. The result is that judgment is to be entered for the plaintiff for nominal damages plus attorneys' fees and costs.

1. *The assignment.* Before the enactment of the UCC, this court held that a claim for damages for wrongful dishonor of checks sounded in contract and was assignable. *Robinson* v. *Wiley*, 188 Mass. 533, 535-536 (1905). The related claim under G. L. c. 93A is a claim for loss of money or property and is assignable even if it is thought to sound in tort. *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33, 44-45 (1975). *Bethlehem Fabricators, Inc.* v. *H.D. Watts Co.*, 286 Mass. 556, 566-567 (1934). The fact that multiple damages are sought does not make the claim unassignable. *Gray* v. *Bennett*, 3 Met. 522, 529-530 (1842). See *Murphy* v. *Household Fin. Corp.*, 560 F.2d 206, 208-210 (6th Cir. 1977). Nothing in the UCC changes these traditional rules. See UCC § 1-103, § 4-402, Comment 2.

It follows that when the company became a debtor in possession under c. 11 of the Bankruptcy Act the claims were part of the estate to be administered, the company had all the powers of a trustee in bankruptcy, and its assignment of the claims transferred them to the plaintiff, unless the proceedings in bankruptcy had some invalidating effect. Bankruptcy Act § 342, 11 U.S.C. § 742 (1970). See 4A Collier, Bankruptcy par. 70.42 (14th ed. 1978); 8 *id.* par. 6.32. The principle that a bankrupt cannot assert a claim after title to it as an asset has vested in a trustee in bankruptcy has no application. See *Tamplin* v. *Wentworth*, 99 Mass. 63, 64 (1868); *Philbrick* v. *Burbank*, 101 N.H. 311, 313 (1958); Annot., 111 A.L.R. 835 (1937); 4A Collier, Bankruptcy par. 70.07 (14th ed. 1978). The defendant alleged that the company had fraudulently concealed the existence of the present claims in the bankruptcy proceedings, but there was no evidence to support that allegation. The judge thought the bank could have sought to have the plan of arrangement set aside in the Bankruptcy Court within six months after it was confirmed, and ruled that its failure to do so barred it from claiming a defense based on failure to list the present claims as assets. See Bankruptcy Act § 386, 11 U.S.C. § 786 (1970); *Matter of Medical Analytics, Inc.*, 410 F. Supp. 922, 923-924 (S.D.N.Y. 1975), aff'd, 532 F.2d 879 (2d Cir. 1976).

He also ruled that the present claims were not required to be asserted as compulsory counterclaims in the bank's turnover proceeding. See *In re Behring & Behring*, 445 F.2d 1096, 1098-1099 (5th Cir.), cert. denied, 404 U.S. 991 (1971); *Joler* v. *Depositors Trust Co.*, 309 A.2d 871, 876 n.1 (Maine 1973). We agree on both points.

2. *Wrongful dishonor*. The bank asserted a right to set off the balance of its revolving loan against the company's deposit. If the set-off was proper, there was insufficient funds, and the dishonor of the checks was not wrongful, although the stated reason, "uncollected funds," was inappropriate. The judge ruled, however, that the set-off came too late, and we agree. Under UCC § 4-303 (1),[1] a set-off exercised by a payor bank "comes too late" to terminate the bank's duty to pay an item if it is exercised after the bank has done any one of several things. As to checks received on Friday, July 16, the bank's midnight deadline was at the end of Monday, July 19, under UCC § 4-104 (*h*), and the bank then became "accountable for the amount of the item" under UCC §§ 4-213 (1) (*d*) and 4-302. The set-off on July 20 came thereafter and was "too late" under § 4-303 (1) (*e*).

---

[1] General Laws c. 106, § 4-303, as appearing in St. 1957, c. 765, § 1: "(1) Any knowledge, notice or stop-order received by, legal process served upon or set-off exercised by a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if the knowledge, notice, stop-order or legal process is received or served and a reasonable time for the bank to act thereon expires or the set-off is exercised after the bank has done any of the following:

"(*a*) accepted or certified the item;

"(*b*) paid the item in cash;

"(*c*) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement;

"(*d*) completed the process of posting the item to the indicated account of the drawer, maker, or other person to be charged therewith or otherwise has evidenced by examination of such indicated account and by action its decision to pay the item; or

"(*e*) become accountable for the amount of the item under subsection (1) (*d*) of section 4-213 and under section 4-302 dealing with the payor bank's responsibility for late return of items."

Hence the subsequent dishonor of these checks was wrongful. See Holland, An Analysis of the Legal Problems Resulting from Wrongful Dishonors, 42 Mo. L. Rev. 507, 513-514 (1977); H. Bailey, Brady on Bank Checks §§ 14.22, 18.7 (5th ed. 1979 & Cum. Supp. 1981).

As to the checks received by the bank on July 19, however, the set-off on the afternoon of July 20 came before the bank's midnight deadline at the end of July 20. The judge ruled that the set-off came too late under § 4-303 (1) (d), because before 6 A.M. on July 20 the bank had "completed the process of posting" the items to the indicated account of the company as drawer and had "evidenced by examination of such indicated account and by action its decision to pay the item." Those rulings rested on the judge's finding, pursuant to § 4-109,[2] that the bank's "usual procedure" involved completion of posting before 6 A.M. on the day following receipt of the item. That finding rested on the testimony of the responsible officer of the bank, which in the judge's view led to an "inescapable conclusion that the decision to pay on the checks presented was made during the 6 P.M. to 6 A.M. period." Although the testimony was not as clear as it might have been, we are unable to say that the judge's finding was clearly erroneous. It follows that the set-off came too late as to all the checks in controversy and that they were wrongfully dishonored.

We need not and do not decide whether we would follow the much discussed decision in *West Side Bank* v. *Marine Nat'l Exch. Bank*, 37 Wis.2d 661 (1968). That decision was criticized in Malcolm, Reflections on *West Side Bank*: A

---

[2] General Laws c. 106, § 4-109, inserted by St. 1963, c. 188, § 7: "The 'process of posting' means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank:

"(a) verification of any signature;

"(b) ascertaining that sufficient funds are available;

"(c) affixing a 'paid' or other stamp;

"(d) entering a charge or entry to a customer's account;

"(e) correcting or reversing an entry or erroneous action with respect to the item."

Draftsman's View, 18 Cath. U.L. Rev. 23 (1968); J. White & R. Summers, Uniform Commercial Code §§ 16-4, 17-7 (2d ed. 1980). But see Leary & Tarlow, Reflections on Articles 3 and 4 for a Review Committee, 48 Temple L.Q. 919, 926-930 (1975). It was rejected in *North Carolina Nat'l Bank* v. *South Carolina Nat'l Bank*, 449 F. Supp. 616, 620 & n.8 (D.S.C. 1976), aff'd, 573 F.2d 1305 (4th Cir.), cert. denied, 439 U.S. 985 (1978); *H. Schultz & Sons* v. *Bank of Suffolk County*, 439 F. Supp. 1137, 1139-1140 (E.D.N.Y. 1977). In the *West Side* case the court did not refer to § 4-303, and it considered the payor bank's "usual procedure" for posting in connection with a clearing house rule allowing delayed returns on the second banking day following receipt of the item. 37 Wis. 2d at 674-675. In deciding the present case under § 4-303 the judge followed the analysis indicated in the official comment with respect to the "decision to pay." See Comment 3, citing *Nineteenth Ward Bank* v. *First Nat'l Bank*, 184 Mass. 49 (1903). See also *Yandell* v. *White City Amusement Park, Inc.*, 232 F. Supp. 582, 585 (D. Mass. 1964); *Go-Tane Serv. Stations, Inc.* v. *Sharp*, 78 Ill. App. 3d 785, 787-788 (1979).

3. *Damages.* The judge awarded damages in the face amount of the dishonored checks. In some circumstances such an award may be appropriate under UCC § 4-402. See *American Fletcher Nat'l Bank* v. *Flick*, 146 Ind. App. 122, 130-131 (1969); *Joler* v. *Depositors Trust Co.*, 309 A.2d 871, 875-876 (Maine 1973); *Loucks* v. *Albuquerque Nat'l Bank*, 76 N.M. 735, 745 (1966). But in the present case the net result of the wrongful dishonor was that the company's bank account was used to pay different debts from those the company sought to pay. The bank's right to set off the amount of its revolving loan is not disputed except on the ground that the set-off came too late to affect the checks that were dishonored on July 20. In this situation an award of damages in the face amount of the checks does not reflect any actual loss suffered by the depositor.

The plaintiff also sought consequential damages, and the judge ruled that such damages were recoverable under

UCC § 4-402[3] if "proximately caused" by the wrongful dishonor. He noted the company's "substantial and continuing financial difficulties beginning well before July 19, 1976," and said that, arguably, its worse performance in July, 1976, was a result of the bank's actions, but that close scrutiny did not support this conclusion. He concluded that the plaintiff had not shown the requisite causal connection. This is a factual conclusion, and we are unable to say that it is clearly erroneous. See *Skov* v. *Chase Manhattan Bank*, 407 F.2d 1318, 1319 (3d Cir. 1969); *American Fletcher Nat'l Bank* v. *Flick*, 146 Ind. App. 122, 135-136 (1969); *Loucks* v. *Albuquerque Nat'l Bank*, 76 N.M. 735, 746 (1966).

Under UCC § 4-402 the special rule for traders laid down in *Wiley* v. *Bunker Hill Nat'l Bank*, 183 Mass. 495, 496-497 (1903), is said to be abolished, and in cases of mistaken dishonor liability is limited to "actual damages proved." UCC § 4-402 and Comment 3. See Holland, An Analysis of the Legal Problems Resulting from Wrongful Dishonors, 42 Mo. L. Rev. 507, 517-526 (1977). The present case is not one of mistake, and we think it proper, in accordance with the *Wiley* case, to order the entry of judgment for nominal damages.

4. *Chapter 93A; attorneys' fees.* The judge found that the company, knowing of the bank's concern, discussed its financial condition with the responsible bank employee and was assured that checks could continue to be drawn on its account without interference. A short time later, the bank, knowing that the value of the collateral for its revolving loan substantially exceeded the amount at risk, undertook

---

[3] General Laws c. 106, § 4-402, inserted by St. 1957, c. 765, § 1: "A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case."

the wrongful dishonor at issue. The judge concluded that the bank committed an unfair act or practice in violation of G. L. c. 93A, § 2, and awarded the plaintiff reasonable attorneys' fees in the agreed amount of $4,500. He declined to allow additional damages. We uphold his rulings.

The bank contends for the first time in its reply brief that G. L. c. 93A does not apply to banks. We reject the argument as contrary to the plain language of the statute. We have no doubt that banks engage in "trade or commerce." The fact that they are exempted from the Federal Trade Commission Act because they are regulated by a different Federal agency does not require a similar exception from c. 93A. We left the point open in *Murphy* v. *Charlestown Sav. Bank*, 380 Mass. 738, 742 (1980), and *Mechanics Nat'l Bank* v. *Killeen*, 377 Mass. 100, 110 n.8 (1979). See *Attorney Gen.* v. *Industrial Nat'l Bank*, 380 Mass. 533, 534-535 (1980); *Don Lorenz, Inc.* v. *Northampton Nat'l Bank*, 6 Mass. App. Ct. 933 (1978). But we have had no hesitation in applying c. 93A to other regulated financial institutions. *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 79 n.6 (1977) (insurance). *Schubach* v. *Household Fin. Corp.*, 375 Mass. 133, 135 (1978) (consumer loans).

We agree with the judge that no actual damages have been proved which are recoverable under G. L. c. 93A, § 11, beyond those recoverable under UCC § 4-402. He was not required to find and did not find that the bank's violation of § 2 was "willful or knowing." Thus there was no abuse of discretion in his denial of multiple damages. See *Linthicum* v. *Archambault*, 379 Mass. 381, 388 (1979).

As for attorneys' fees, we agree with the Appeals Court that in most cases it would be "anomalous" to grant such fees to a plaintiff to whom no other relief is awarded. See *Levy* v. *Bendetson*, 6 Mass. App. Ct. 558, 567 (1978). But the statute is explicit: "If the court finds in any action commenced hereunder, that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs in-

curred in said action." § 11, Sixth, inserted by St. 1972, c. 614, § 2, and amended through St. 1979, c. 72, § 2. Here the judge made the requisite finding, and the action was not frivolous, unreasonable or groundless. We think an award of modest attorneys' fees was appropriate even though the plaintiff failed to prove substantial damages. See *McNamara* v. *Moody*, 606 F.2d 621, 626 (5th Cir. 1979), cert. denied, 447 U.S. 929 (1980); *Nadeau* v. *Helgemoe*, 581 F.2d 275, 280-281 (1st Cir. 1978).

5. *Disposition*. The judgment is reversed and the case is remanded to the Superior Court. Judgment is to enter for the plaintiff for $1.00, plus $4,500 attorneys' fees and costs of the action. No argument is made with respect to counsel fees and costs on these appeals, and such questions are left to further proceedings in the Superior Court.

*So ordered.*