[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO STRIKE
FACTUAL BACKGROUND
The plaintiff is a bank which entered into a mortgage agreement on July 22, 1987 with the defendants Jessica and Mark Breen. Jessica Breen is the record owner of real estate in West Hartford which is the subject of the mortgage. The mortgage was given as security for a note executed by Mark Breen as guarantor, in the amount of $300,000.
The complaint charges the defendants with default of the note and seeks damages, a deficiency judgment, foreclosure of the mortgage, interest and costs. The defendants have filed an answer, special defenses, and counterclaims, the essential allegations of which involve the plaintiff's oral representations that the loan would be extended until such time as the defendant Mark Breen could sell or refinance certain commercial real estate in which he had an interest.
The plaintiff has moved to strike the second count of the defendants' counterclaim which alleges that plaintiff's reneging on its oral promise to extend the loan constituted a violation of CUTPA. The grounds for the motion are (1) the banks are exempt from CUTPA and (2) the acts alleged do not rise to the level of CUTPA violation.
ISSUE
 1. Whether General Statutes 42-110 et seq. ("CUTPA") applies to banks; and CT Page 2426
 2. If so, whether the defendants' second counterclaim states facts legally sufficient for a cause of action under CUTPA.
LAW AND CONCLUSION
"The purpose of a motion to strike is to `contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted.' Practice Book 152 (citation omitted)". Gordon v. Bridgeport Housing Authority 208 Conn. 161, 170 (1987). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Id. "The court must construe the facts in the complaint most favorably to the plaintiff." Id. The motion to strike does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985).
I. DOES CUTPA APPLY TO BANKS?
General Statutes 42-110b provides, in pertinent part, that:
 "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or or practices in the conduct of any trade or commerce. "
In determining whether a practice violates CUTPA, the court should employ these criteria:
 "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]."
Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254 (1988).
The exceptions to CUTPA's coverage are set forth at General Statutes 42-110C. That statute provides, in pertinent part: CT Page 2427
 (a) Nothing in this chapter shall apply to: (1) Transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States;
Although this court has previously ruled that CUTPA applies to banks, (Peterson v. Peoples Bank, 16 CLT 1 (Super Ct. 1-1-90, Freed, J.), a brief summary of the cases and arguments advanced for and against the application of CUTPA to banks is appropriate at this time.
CUTPA Should Apply To Banks
The Supreme Court and Appellate Court have not ruled on this issue. The Attorney General's office; according to to letter appended to the defendants' memorandum in opposition, takes the position that CUTPA does apply to banks. In addition to the cases cited in that letter, the following cases have also held that CUTPA applies to banks.
In Weisman v. Westport Bank Trust Co., 1 CSCR 283, 284
(April 30, 1986, Zoarski, J.), the court reasoned that since CUTPA is a remedial statute and is to be construed liberally to effectuate its public goals, granting banking institutions a CUTPA exemption may be improper judicial expansion of a legislative exception. Similarly, in Poquonnock Avenue Associates v. Society for Savings, 6 Conn. Law Trib., No. 17, p. 20 (Sup. Ct., April 15, 1980, Hendel, J.), the court held that "[i]n accordance with the legislative mandate of section 42-110b(d) . . . the foreclosure of a commercial mortgage, or threat of foreclosure, thereof may constitute a violation of the CUTPA." Also agreeing with the general proposition that CUTPA applies to banks are Pia v. MidConn Bank Security of America Life Ins. Co., 4 CSCR 143 (1989) (Dorsey, J.); and Wright v. The Bank of Darien, 3 CSCR 253 (1988) (Harrigan, J.).
Among the reasons cited by those favoring the application of CUTPA to banks are: that the language of the statute favors liberal construction (42-110(d)); that the activities intended for exemption are specifically enumerated (42-110c); that it is possible "to find methods, acts or practices not heretofore specifically declared unlawful by the FTC or the federal courts to be prohibited by the CUTPA." Wilson v. Fireman's Fund Ins. Co., 40 Conn. Sup. 336, 338 (1985); that the holding of Mead v. Burns, 199 Conn. 651 (1986) (insurance companies are subject to CUTPA even though regulated by the Commissioner of Insurance and the Connecticut Unfair Insurance Practices Act ("CUIPA"), General Statutes 38-60 et seq.) may be analogized to the banking industry; and that the public CT Page 2428 policy underlying CUTPA (protection of the state's citizens from unscrupulous business practices) may not be fully realized by reposing all authority over banking activities in regulatory bodies.
CUTPA Should Not Apply to Banks
The case cited by the plaintiff and the one most often cited for the proposition that CUTPA does not apply to banks is People's Bank v. Horesco, 1 CSCR 62 (1986) (Jacobson, J.). In that case the court drew guidance from the language of General Statutes 42-110b(b) which reads:
 (b) It is the intent of the legislature that in construing subsection (a) of this action, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission act (15 U.S.C. § 45 (a)(1)), as from time to time amended.
It was the exemption of banks from direct regulation by the FTCA (15 U.S.C. § 45 (a)(2)) which Judge Jacobson found most persuasive in concluding that CUTPA did not apply to banks. He observed that Massachusetts seems to hold likewise as regards that state's consumer protection statute, which is virtually identical to CUTPA. The case relied on by Judge Jacobson; Mechanics National Bank of Worchester v. Killen,377 Mass. 100, 384 N.E.2d 1231 (1979) does not hold that banks are exempt from G.L.C. 93a (Massachusetts' CUTPA analogue); it rather "left the point open." Raymer v. Baystate National Bank, 384 Mass. 310, 319 (1981). Raymer settles the issue in Massachusetts in a manner opposite the Horesco holding: "The bank contends . . . that G.L.C. 93A does not apply to banks. We reject the argument as contrary to the plain language of the statute. We have no doubt that banks engage in `trade or commerce.'" Id. at 319.
The exemption of banks from direct regulation under the FTCA may not give a complete picture of the federal regulatory scheme. While the federal law concededly contemplates direct regulation of banks within such agencies as the Comptroller of the Currency and the Federal Deposit Insurance Corporation, such regulation is by statute done according to rules promulgated by the FTC. See 15 U.S.C. § 57a, subsections (a)(1) and (f)(2). Substantively, therefore, the bank regulators' role must be viewed as ministerial, with the rule-making authority reposed in the Federal Trade Commission. As Judge Newman pointed out in his dissenting opinion in Katherine Gibbs CT Page 2429 School, Inc. v. FTC, 612 F.2d 658, 670 (2d Civ. 1979):
 In 1975 Congress settled the long-standing question of whether the Federal Trade Commission has substantive rule-making authority by enacting 202(a) of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act . . . codified at 15 U.S.C. § 57a (1976). This legislation made explicit the Commission's substantive rule-making authority with respect to unfair or deceptive acts or practices.
In American Savings Bank, FSB v. Amity Bank v. Chesire Management Co., Ronald Nemeyer, Lori Nemeyer, and Richard Weinstein, Civ. No. B-88-534, U.S. D.C. July 27, 2989, Judge Cabranes put the matter unequivocally: "The FTC Act does indeed cover banks, 15 U.S.C. § 57a(f)." (See attached). Inasmuch as both the federal and Massachusetts underpinnings of the Horesco decision appear now to be doubtful, this court believes that the majority rule is to be preferred.
In support of its position, the plaintiff relies on Russell v. Dean Witter Reynolds, 200 Conn. 172 (1986) and Bristol Savings Bank v. Sattler, et al, 4 CSCR 351 (1989, Aaronson, J.). Bristol Savings Bank relied on Russell which held that CUTPA does not apply to deceptive practice in the sale of securities.
If courts are to be guided by "look[ing] to the standards developed by the FTC for . . . determination of what constitutes a cognizable unfair or deceptive practice under CUTPA", and if such practices are to be determined in reference to banks by the FTC under 57a, then Russell has little precedential force as regards banks; in the banking area federal law has not "authoritatively informed us that [banking] is presently within [or without] the ambit of the FTC", Russell, supra, 180. Our Supreme Court in Mead v. Burns, supra, found that CUTPA does apply to insurance, whereas in Russell the court found CUTPA inapplicable to securities.
It should be noted that the court in Russell had previously recognized a separate statutory right of action in the securities area under General Statutes 36-498 ("CUSA"), Russell, supra 175-76. The existence of CUSA may have figured strongly in the court's holding in Russell: since the right to sue was already there under CUSA, applying CUTPA to the same transaction would be duplicative. No such separate statutory right of action exists for bank customers, however.
The structure of the federal regulatory apparatus, as above CT Page 2430 noted, contemplates that bodies regulating the banking industry will be implementing rules promulgated by the Federal Trade Commission pursuant to 15 U.S.C. § 57a. Therefore, bank regulation under the federal scheme may properly be seen as controlled by "interpretations given by the Federal Trade Commission . . . to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45 (a)(1)." General Statutes 42-110b(b). The language of CUTPA does not link it to the FTC's enforcement powers, (from which banks are exempt), but rather to its interpretive powers. As to those powers, 15 U.S.C. § 57a clearly applies to banks, and CUTPA does as well.
II. Does the second count of defendants' counterclaim allege sufficient facts to state a cause of action under CUTPA?
As above noted, the case of Poquonnock Avenue Associates v. Society for Savings, supra, 20, held that foreclosure of a commercial mortgage, or even the threat of foreclosure, could constitute a CUTPA violation.
In the second count of their counterclaim the defendants have incorporated by reference allegations that the borrowers had been given assurances that the loan would be extended "until the earlier of the happening of a refinancing of said property or a sale of said property." First Special Defense, paragraph 3 (incorporated by reference into second count of counterclaim). If the defendants can prove the existence of such an agreement, the foreclosure by the plaintiff bank could reasonably, be found by a jury to be "within at least the penumbra of some common law, statutory, or other established concept of unfairness [or that] it is immoral, unethical, oppressive or unscrupulous, or causes substantial injury to consumers." Sportsmen's Boating Corporation v. Hensley, 192 Conn. 747, 756 (1984).
The plaintiff bank has relied on Gibbs v. Mase, 11 Conn. App. 289
(1987) for the proposition that a breach of contract by itself cannot rise to the level of a CUTPA violation. The Gibbs case is inapposite. The setting was an appeal from a probable cause hearing to dissolve an attachment rather than a pre-trial motion to strike. The trial court in Gibbs, whose dissolution of attachment was appealed from, had had the opportunity to evaluate the credibility of witnesses and had further assessed the damages from the breach at $1750. Id. at 296-97.
Here, by contrast the court has only the pleadings to consider and must construe them most favorably to the defendants in ruling on the motion. Gordon v. Bridgeport Housing Authority, supra, 170. The damages alleged to have resulted from the breach may amount to the loss of defendants' home, rather than a slight detriment to the value, as in Gibbs. CT Page 2431
Facts provable under the second count of the counterclaim could bring the plaintiff's conduct within the standards of Sportsmen's Boating Corp.
For all the foregoing reasons, the plaintiff's motion to strike the second count of defendants' counterclaim is denied.
FREED, J.