SHAWMUT COMMUNITY BANK, N.A. *vs.* DOMENIC T. ZAGAMI.

Middlesex. October 10, 1991. - February 18, 1992.

Present: LIACOS. C.J., WILKINS, LYNCH. O'CONNOR. & GREANEY, JJ.

*Practice, Civil,* Appeal, Record. *Rules of Appellate Procedure. Judgment,* Interest. *Consumer Protection Act,* Availability of remedy, Bank, Consumer, Mortgage of real estate.

This court declined to review certain issues raised on a civil appeal, where the parties failed to present an adequate record appendix and did not comply with the provisions of Mass. R. A. P. 18 (a) or 18 (f). [810-812]

Prejudgment interest at the rate of twelve per cent per annum was properly included, pursuant to G. L. c. 231, § 6B, in the judgment on a jury verdict allowing recovery on a claim of common law fraud. [812-813]

Section 9 of G. L. c. 93A, the Consumer Protection Act, as in effect prior to its amendment by St. 1979, c. 406, § 1, provided no relief to a non-business plaintiff whose claims were based on two loan agreements and a mortgage of a parcel of commercial real estate. [814-815]

CIVIL ACTION commenced in the Superior Court Department on January 17, 1979.

The case was tried before *Suzanne V. DelVecchio,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain appellate review.

*Michael C. Gilleran* for the plaintiff.

*Edward J. Collins* for the defendant.

LIACOS, C.J. On April 19, 1979, Domenic T. Zagami brought this counterclaim in the Superior Court against Shawmut Community Bank, N.A. (Shawmut), alleging fraud and violations of G. L. c. 93A.[1] The fraud claim was

---

[1] Shawmut had filed a complaint against Zagami on January 17, 1979, claiming that Zagami had failed to pay money due on an agreement

tried to a jury, and, in a judgment entered on September 2, 1986, Zagami was awarded damages in the amount of $225,000, as well as prejudgment and postjudgment interest. A subsequent bench trial on the c. 93A claim resulted in a September 1, 1988, judgment for Zagami under c. 93A, § 9. The trial judge awarded no multiple damages under c. 93A, § 9 (3), finding that Shawmut had not violated the statute wilfully or knowingly. However, she did order the bank to pay Zagami's attorney's fees and costs. See G. L. c. 93A, § 9 (4).

Shawmut appealed from both judgments, and Zagami appealed from the c. 93A judgment. As a result of the parties' failure to file copies of the trial transcripts, see Mass. R. A. P. 18 (a), as amended, 409 Mass. 1602 (1991), and a record appendix meeting the requirements of Mass. R. A. P. 18 (d), as amended, 370 Mass. 919 (1976), the Appeals Court refused to consider all but two of the issues raised in the briefs. 30 Mass. App. Ct. 371, 374 (1991). That court affirmed the award of prejudgment and postjudgment interest, and remanded the c. 93A claim for additional explanation of the ruling that the violation was not wilful or knowing. Having granted Shawmut's application for further appellate review, we order reversal of the judgment entered under G. L. c. 93A, and affirm the judgment under the common law count alleging fraud.

1. *Facts.* We briefly summarize the evidence put before the jury and the judge hearing the claim under c. 93A. The case involved a series of bank transactions beginning in 1973. At that time, Zagami, a plumber, owned a piece of commercial real estate in Waltham, where he operated his plumbing business and leased space to several business tenants. General Systems Development Corporation (G.S.D.) was one of his tenants, and William T. Quinn was the president of G.S.D.

---

signed by the two parties in 1977. The parties settled Shawmut's claim prior to trial. Zagami's counterclaim alleged conversion (in addition to fraud and violations of c. 93A), but apparently this issue also was settled before trial.

In 1973, Zagami executed two promissory notes to Shawmut. The proceeds of these loans he invested in G.S.D. The first of these notes, dated April 9, 1973, was for $25,000 and was cosigned by Zagami and Quinn (April note). The money obtained was used by Quinn. Quinn made payments on the April note until 1975, at which time G.S.D. became bankrupt. Contrary to its established procedures, Shawmut never notified Zagami that this loan was in arrears until January, 1977.[2]

On December 5, 1973, Zagami and his wife signed a note for $50,000 (December note). The Zagamis gave the money to Quinn, in exchange for shares of G.S.D. stock and Quinn's promise to repay the loan by Shawmut. Quinn and one Morgan, a Shawmut employee, had led the Zagamis to believe that G.S.D. would be receiving a large investment from another source, and that Quinn would repay the December note given to Shawmut with this money. Zagami claimed that Quinn and Morgan misled him, because they knew, but did not reveal, that the other investor's first check had been dishonored on presentment and that Quinn had recently signed a $50,000 note of his own that he was unable to pay. Quinn was able to repay $25,000 of the December note; Zagami paid the remainder.

Shawmut then attempted to collect from Zagami an additional $25,000. Zagami questioned the source of this debt, believing that the December note was paid and the April note had never issued. According to the judge, Shawmut's employees, agents, and attorneys were confused about the source of the debt. They led Zagami to believe that the money was due on the December note, implying that Quinn had not paid $25,000. In fact, the money Shawmut was attempting to collect from Zagami was due on the April note.

Facing Shawmut's threat of a lawsuit, in January, 1977, Zagami signed an agreement which gave him additional time

---

[2]Zagami would later argue at trial that he had signed the April note in blank and was not aware that the note had ever been executed and delivered to Shawmut.

to repay the $25,000. He also executed a mortgage deed of his commercial real estate to secure the debt. Both the agreement and the mortgage explicitly stated that the money was due on the April note. When the note came due and Zagami could not pay it, Shawmut began foreclosure proceedings on the real estate. Zagami sold his property at a price he considered substantially below what the market would offer.

2. *Failure to comply with the Massachusetts Rules of Appellate Procedure.* The Appeals Court refused to review most of the issues raised on appeal, due to "gross and pervasive deficiencies, attributable to both parties, in the record presented to" the court. 30 Mass. App. Ct. at 371.[3] Although both parties referred repeatedly to a trial transcript of almost 1,500 pages in their briefs, they did not file copies with the court, choosing instead to provide photocopies of a few pages of selected testimony. The record appendix was a "diffusely arranged" collection of material containing some documents that were incomplete, irrelevant, duplicative, or illegible. See 30 Mass. App. Ct. at 373. The parties failed to include in the appendix most of the relevant trial and posttrial motions; they also omitted a transcript of the hearing on posttrial motions. The pages of the appendix were not numbered consecutively nor was the material arranged in chronological order. Neither party asked, prior to argument, for permission to refer to parts of the record omitted from the appendix, see rule 18 (a), nor did they request that the court dispense with the need for an appendix, see Mass. R. A. P. 18 (f), 365 Mass. 864 (1974).

---

[3]The Appeals Court considered only two of the substantive claims: (1) Zagami's claim the judge erred in failing to find Shawmut's violation of c. 93A to have been wilful and knowing under G. L. c. 93A, § 9 (3); (2) Shawmut's claim of error relative to the award of prejudgment interest on the common law fraud finding of the jury (see G. L. c. 231, § 6B [1990 ed.]). See 30 Mass. App. Ct. at 375, 377. We limit our review to these two issues, considering only the additional claim the Appeals Court erred in its view of the requirements of rule 18.

Shawmut argues that we should consider its appeal on the merits, because it has corrected the flaws in the record and because the failure to file copies of the transcript was based on a reasonable, good-faith misreading of Mass. R. A. P. 18 (b), as amended, 378 Mass. 940 (1979). The cited rule states in pertinent part: "In designating parts of the record for inclusion in the appendix, the parties shall have regard for the fact that the entire record is always available to the court for reference and examination and shall not engage in unnecessary designation." In support of its argument, Shawmut refers to *Menard* v. *McCarthy*, 410 Mass. 125, 128 (1991), in which this court held that a misreading of rule 18 (b) that is not "in bad faith or . . . totally unreasonable" should not prevent consideration of the merits of an appeal once the appellant is informed of the mistake and corrects it. Shawmut argues that, based on its reading of rule 18 (b), it honestly believed that it should not file the bulky trial transcript. It further contends that its interpretation was reasonable and that the rule is misleading. We disagree.

In pursuing its appeal, Shawmut had an obligation to include copies of the trial transcript in the record appendix. Under rule 18 (a), an appellant must provide the reviewing court with all relevant portions of the record. Rule 18 (b) complements, and does not negate, this requirement. The term "unnecessary designation," referred to in rule 18 (b), warns against inclusion of items in the record appendix which are either irrelevant or at least tangential to the issues presented for review. See *Holleman* v. *Gibbons*, 27 Mass. App. Ct. 563, 567 (1989) (appeal heard after appellant filed trial transcripts where original omission of transcripts was based on erroneous reading of rule 18 [b] and all other procedural rules were correctly followed). As the Appeals Court noted, in the case before us, review of the transcript is necessary to determine whether the arguments raised on appeal are first, correct, and second, properly preserved. Inclusion of

the transcript here is certainly not an unnecessary designation.[4]

Because the parties' appellate missteps surpass those considered in *Menard*, we need not consider the merits of the appeal not reviewed by the Appeals Court. Were the parties' mistakes the result of mere inadvertence, the situation would be the same as that in *Menard* and *Holleman*. The Appeals Court held, however, that "[t]he grave and almost universal failure to present an adequate appendix prevents a characterization of inadvertence; rather we are compelled to the conclusion that there has been serious 'negligence or a lack of attention and diligence.'" 30 Mass. App. Ct. at 373-374, quoting *Holleman*, *supra* at 568. We have reviewed the record appendix filed by the parties in the Appeals Court. We conclude that the ruling by the Appeals Court was correct. The parties did much more than omit transcripts; they omitted motions, included unacceptable copies of documents, and violated the requirements of the proper arrangement of the record appendix set forth in rule 18 (d).[5] The Appeals Court acted entirely correctly in refusing to overlook such gross violations of the rules of appellate procedure. Thus, we also limit our review of the substantive issues to those considered by the Appeals Court.

3. *Prejudgment and postjudgment interest on the fraud judgment.* Shawmut raises various challenges to the judgment in favor of Zagami on the issue of fraud. The Appeals Court considered only the claim of error in the award of prejudgment interest on the common law fraud judgment. We do the same.

---

[4]In civil cases, the parties cannot assume that the trial court clerk will transmit copies of the transcripts to the Appeals Court. See *Menard* v. *McCarthy*, 410 Mass. 125, 129 (1991).

[5]The case before us resembles *Kunen* v. *First Agric. Nat'l Bank*, 6 Mass. App. Ct. 684, 690-691 (1978), more than *Menard* or *Holleman*. In that case, the Appeals Court refused to consider the appeal of a party who omitted vital exhibits, as well as copies of the trial transcript, from the record appendix.

On this judgment, Zagami was awarded prejudgment and postjudgment interest on his damages at the rate of twelve per cent. Shawmut disputes the award, because G. L. c. 231 § 6B, which establishes the rate of prejudgment interest on certain tort judgments, does not specifically list fraud among the torts to which it applies, and G. L. c. 231 § 6H, a more inclusive provision, does not apply to actions commenced prior to March 19, 1984. St. 1983, c. 652, § 3. Shawmut concedes that Zagami is entitled to interest, but only at the rate of six per cent. See G. L. c. 107, § 3 (1990 ed.).[6]

The Appeals Court affirmed the award of twelve per cent interest under G. L. c. 231, § 6B, and we agree. Section 6B requires prejudgment interest at the rate of twelve per cent on "pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damage to property . . . ." G. L. c. 231, § 6B. The language does not refer to any specific tort but rather applies in general to a wide range of actions causing injury to the person or to property. We have affirmed the award of § 6B interest in analogous cases sounding in tort. See *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 717-718 (1990) (fraud); *von Henneberg* v. *Generazio*, 403 Mass. 519, 525 (1988) (nuisance); *Leahy* v. *Local 1526, Am. Fed'n of State, County, & Mun. Employees*, 399 Mass. 341 (1987) (breach of the duty of fair representation in the area of labor law); *Patry* v. *Liberty Mobilehome Sales, Inc.*, 394 Mass. 270 (1985) (c. 93A claim). Faced squarely with the issue whether the section applies to fraud judgments, we hold that it does. At common law, fraud is a claim which may sound in tort. See, e.g., *Ginn* v. *Almy*, 212 Mass. 486, 493 (1912). The claim in this case was a claim based on alleged tortious misconduct, namely, fraud. In the case before us, Zagami suffered damage to property in the sense that he lost both money and commercial real estate. There was no error. The judgment (together with the interest awarded) is affirmed.

---

[6]Under G. L. c. 235, § 8 (1990 ed.), postjudgment interest is awarded at the same rate as prejudgment interest.

4. *Applicability of G. L. c. 93A.* Both Shawmut and Zagami appeal from the c. 93A judgment. The Appeals Court reached the issue whether this was a wilful or knowing breach requiring an award of multiple damages, see G. L. c. 93A, § 9 (3); it remanded the case to the judge for clarification of her reasoning on this point. We review only the parties' dispute on the question whether c. 93A provided relief for a plaintiff in Zagami's position. We hold that it did not and therefore we need not consider the additional issues raised in this part of the appeal.

Plaintiffs seeking damages under G. L. c. 93A proceed under one of two sections of the chapter. General Laws c. 93A, § 9, applies to the consumer, "an individual who participates in commercial transactions on a private, nonprofessional basis." See *Lantner v. Carson*, 374 Mass. 606, 610 (1978). By contrast, G. L. c. 93A, § 11, applies to the business person, "[a]ny person who engages in the conduct of any trade or commerce." G. L. c. 93A, § 11. Section 11 "was intended to refer to individuals acting in a business context in their dealings with other business persons and not to every commercial transaction whatsoever." *Manning v. Zuckerman*, 388 Mass. 8, 10 (1983).

The judge treated Zagami as a § 9 plaintiff, even though several of the cases she cited in her findings were cases based on § 11. E.g., *Cabot Corp. v. Baddour*, 394 Mass. 720, 721 (1985); *Raymer v. Bay State Nat'l Bank*, 384 Mass. 310, 311 (1981). Zagami was a plumber who owned one piece of commercial real estate. If he had been dealing with the bank as a plumber or as a commercial landlord, then he could have proceeded under § 11. But in taking out loans and investing the proceeds, he was acting on a private, nonbusiness basis. The fact that he cosigned the first note with Quinn (who was acting in a business capacity as president of G.S.D.), and the fact that he secured his debt with commercial real estate, do not change his status as a consumer for the purposes of c. 93A.

While General Laws c. 93A, § 9, as appearing in St. 1979, c. 406, § 1, now applies to "[a]ny person, other than a person

entitled to bring action under section eleven," the language of § 9, as appearing in St. 1979, c. 72, § 1, limited the class of potential plaintiffs to "[a]ny person who purchases or leases goods or services or property, real or personal, primarily for personal, family or household purposes . . . ." Zagami's cause of action arose prior to the effective date of the amendment, October 18, 1979. Thus, his claim is determined according to the preamendment language. See *Murphy* v. *Charlestown Sav. Bank*, 380 Mass. 738, 743 (1980).

Zagami does not qualify as a plaintiff under the preamendment language of § 9. His claims are based essentially on two loan agreements and one mortgage. In *Murphy*, we held that loans and mortgages are the not the kinds of transactions described by the earlier version of § 9. The plaintiffs in that case were home loan mortgagors; they argued that they had purchased the use of money from a bank, the price being their interest payments. We rejected the argument, stating that "we do not think that the word 'purchase' in former G. L. c. 93A, § 9, was intended to include a conventional home loan mortgage." *Murphy, supra* at 744. See *Danca* v. *Taunton Sav. Bank*, 385 Mass. 1, 2 (1982). As loans and mortgages are not purchases, Zagami was not involved with Shawmut in a transaction covered by the earlier version of § 9. Accordingly, G. L. c. 93A, § 9, did not provide him a remedy.[7]

In light of our holding, there is no need for a remand to the Superior Court for clarification of the reasoning behind the judgment. The judge did not award separate damages under c. 93A, so we need take no action on that score. However, Zagami was awarded attorney's fees and costs pursuant to G. L. c. 93A, § 9 (4). This award cannot stand. See *Danca, supra* at 10. We also decline to award appellate attorney's fees to Zagami as requested.

---

[7]The judge noted correctly that G. L. c. 93A does apply to the conduct of banks. See *Raymer* v. *Bay State Nat'l Bank*, 384 Mass. 310 (1981). This means only that banks are appropriate defendants in c. 93A cases, whereas our concern is who is an appropriate plaintiff.

The judgment of the Superior Court on the common law count of fraud is affirmed. The judgment under G. L. c. 93A is reversed and a judgment for Shawmut is to be entered on that claim.

*So ordered.*