NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-556

ADAM WEBSTER PERDOMO

vs.

WILLIAM G. BROOKS[1] & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Adam Webster Perdomo, filed an action in the District Court under G. L. c. 140, § 131 (f), challenging a decision by the defendant chief of police of the town of Norwood (chief) not to reinstate Perdomo's license to carry a firearm (LTC) despite the lapse of a G. L. c. 209A restraining order against Perdomo.[3]  After an evidentiary hearing, a judge affirmed

---

[1] As he is chief of police of the town of Norwood.

[2] Dedham Division of the District Court Department.

[3] Section 131 has been amended several times during the period at issue.  When the LTC was issued in 2019 and when the chief initially suspended it in December 2020, the governing version was § 131 as then most recently amended by St. 2018, c. 123, §§ 11-12.  We refer to this as the 2018 version.  When Perdomo unsuccessfully requested reinstatement and then sought

the chief's decision that Perdomo remained unsuitable for licensure. Perdomo then sought certiorari review in the Superior Court, where judgment entered affirming the District Court decision. Perdomo now appeals, arguing that the chief's decision improperly relied on certain information that predated the c. 209A order. Seeing no error in the District Court judge's decision, and further concluding that Perdomo waived his constitutional claims by failing to raise them in the District Court, we affirm the Superior Court judgment.[4]

Background. We recite the essential facts as found by the District Court judge, supplemented with undisputed facts drawn from the record. In 2019, Perdomo applied to the chief for an LTC. The police department's chief clerk reviewed the application and provided the chief with records showing, among other things, that Perdomo had a domestic incident with his

---

and obtained judicial review in the District Court, the governing version was § 131 as amended by St. 2014, c. 284, §§ 46, 47, 49, 52, and 54, with a delayed effective date of January 1, 2021. See St. 2014, c. 284, § 112. Therefore, despite its enactment in 2014, we refer to this as the 2021 version. The version presently in effect is § 131 as amended through St. 2022, c. 175, §§ 4-17A. We refer to this as the 2022 version. We note, where applicable, those instances in which the 2022 version differs from the prior versions on which we rely. Perdomo does not argue that any particular version of the statute should apply to our analysis of any particular issue.

[4] We acknowledge the amicus letter submitted by the Attorney General.

former wife in Boston in 2011 and three incidents with his current wife in Norwood -- two in 2017 and one earlier in 2019.[5] The chief then issued Perdomo an LTC -- a decision implying that the chief had not found Perdomo so "unsuitable" as to warrant the denial of Perdomo's application.[6]

On December 23, 2020, the chief sent Perdomo a letter suspending his LTC on the ground that his wife had just obtained an ex parte c. 209A order against him in Probate and Family Court. As the chief explained at the evidentiary hearing, when a court issues a restraining order against a licensee, the police department that issued the license receives automatic electronic notice, and then the electronic licensing system

---

[5] The Boston incident led to Perdomo being charged with assault and battery; the charge was resolved with an admission to sufficient facts and a continuance without a finding for six months, after which the case was dismissed. The Norwood incidents, as described in police reports, involved verbal arguments in 2017 and 2019 that did not involve physical contact, and a 2017 argument in which Perdomo and his wife each claimed to have been physically assaulted by the other.

[6] The 2018 version of § 131 (d), see supra note 3, provided that "[t]he licensing authority may deny the application [for an LTC] . . . or suspend or revoke [it] . . . if, in a reasonable exercise of discretion, the licensing authority determines that the . . . licensee is unsuitable . . . to continue to hold [an LTC]" (emphasis added). G. L. c. 140, § 131 (d), as amended through St. 2018, c. 123, §§ 11, 12. Under § 131 as now in effect, the licensing authority "shall" deny an application for, or suspend or revoke, an LTC "if the applicant or licensee is unsuitable to be issued or to continue to hold" such a license (emphasis added). G. L. c. 140, § 131 (d), as amended by St. 2022, c. 175, §§ 4-17A.

3

automatically generates a letter from the chief suspending the license. This is because State law prohibits a person subject to such a restraining order from holding an LTC. See G. L. c. 140, § 131 (d) (vi) (all relevant versions, see note 3, supra). See also 18 U.S.C. § 922(g)(8)(A) (prohibiting possession of firearm by person subject to restraining order issued after notice and opportunity to participate in hearing).

The chief testified that, after such an immediate suspension, "we look further into the circumstances behind the restraining order to see if there are other facts that we should know about." "[W]e always, as a matter of course, seek the affidavit filed by the plaintiff in support of the order." In this instance, the affidavit filed by Perdomo's wife stated as follows:[7]

> "Adam has a habit of hurting me every time he gets upset. He grabs me by my arm and pushes me around. I have many pictures. Evidence to show the harm. I have had many conversations with Adam to stop this behavior and even seek medical advice. But it's going nowhere. Adam had a history of domestic violence in the past with his ex-wife. She filed a restraining order.
>
> "Last aggressive behavior was last night when Adam pushed me so hard and I fell onto the ground while my nine-year-old was in the house. I need help to stop this. I can't do it on my own!"

---

[7] Our quotation alters some aspects of the form of her statement, but not its substance. We have done the same in our quotations, infra, of her subsequent motion to terminate the order and her later letter to the chief.

The day after the c. 209A order issued, however, Perdomo's wife filed a motion in Probate and Family Court to terminate the order.[8]  In her motion, she stated in pertinent part as follows:

> "After talking with my family I decided the best solution and fair for me is to file for divorce.  This is the best for me and my kids!  Please know this order is against my religion and beliefs and I want to exit this relationship peacefully.  Please know this is the first time I filed for this order and had NO knowledge about it!"

She did not appear at the scheduled January 5, 2021 hearing to extend the c. 209A order, and the case was dismissed.

The next day, January 6, 2021, Perdomo wrote to the chief to request that his LTC be reinstated.  After apparently receiving no immediate response, Perdomo filed suit against the chief in District Court on March 10, 2021.

In his complaint, Perdomo acknowledged that a person subject to a current c. 209A order is statutorily ineligible for an LTC, but he asserted that if such a person "is no longer the current subject of [a c. 209A] order," the person is "no longer

---

[8] Perdomo has failed to include in the record appendix the complete record of District Court proceedings filed in the Superior Court, which included his wife's motion and other exhibits from the evidentiary hearing.  This violates the "fundamental and long-standing rule of appellate civil practice" that the appellant has an obligation "to include in the appendix those parts of the [record that] are essential for review of the issues raised on appeal."  Shawmut Community Bank, N.A. v. Zagami, 30 Mass. App. Ct. 371, 372-373 (1991), S.C., 411 Mass. 807 (1992).  We have nevertheless obtained and considered the complete record of the District Court proceedings.  See Mass. R. A. P. 18 (a) (1) (D), as appearing in 491 Mass. 1603 (2023).

5

disqualified."  Perdomo further acknowledged that the chief could still "deny or suspend an LTC on the basis that a prior [c. 209A] order renders [a person] 'unsuitable,'" but he asserted that the chief had "failed to re-assess [Perdomo's] suitability after the [c. 209A order was] terminated."  The complaint sought reversal of the suspension decision and an order that the chief issue an LTC to Perdomo.

The day after Perdomo filed his complaint, the police department's chief clerk sent Perdomo a second, "supplemental" letter of suspension.  The letter explained that Perdomo's LTC "remains suspended . . . for reasons that you are presently unsuitable for reinstatement based upon a totality of circumstances related to a history of allegations of domestic assault and/or threats."[9]

At the District Court evidentiary hearing, the chief testified that although Perdomo's wife had asked that the c. 209A order be terminated, she had not recanted any of the statements she made in her earlier affidavit.  That affidavit

---

[9] The labeling of the second letter as "supplemental" was in one sense a misnomer.  As we explain further, infra, that letter did not supplement the reason given in the first letter for the original suspension, which was that the pending c. 209A order disqualified Perdomo from licensure.  Rather, the second letter stated the reason for continuing the suspension (i.e., refusing reinstatement) even after Perdomo was no longer disqualified: that Perdomo had also been determined unsuitable for licensure.

described Perdomo's "habit of hurting [her] every time he gets upset" and his recent physical assault on her; it also referred to Perdomo's history of domestic violence with her and Perdomo's former wife. The chief acknowledged that at least some of that history had been known to him at the time he originally issued the LTC in 2019, but not the facts asserted for the first time in the affidavit. In this case, the chief determined that, based on the affidavit underlying the c. 209A order, there was additional reason, beyond the temporary pendency of the restraining order itself, to suspend Perdomo's LTC.[10] The chief explained that "we do occasionally write out a supplemental letter [of suspension] when additional facts come to light." Based on "the totality of the circumstances," the chief "believe[d] that [Perdomo] was no longer suitable to be licensed."

Perdomo himself also testified at the evidentiary hearing. He stated that he had complied with the initial c. 209A order, and that the affidavit was written and signed by his wife. His

---

[10] The chief acknowledged that he had also received a letter from Perdomo's wife, dated January 16, 2021, asking the chief, "on behalf of my husband and myself, to reinstate his LTC." It further stated, "I have absolutely no fear of him hurting me or our kids." The chief testified, however, that he gave "great weight" to the earlier affidavit, because it was written contemporaneously with the events it described and was signed under the pains and penalties of perjury.

7

counsel did not ask, and he did not say, whether the statements in the affidavit were true.

After the hearing, the District Court judge issued a decision "credit[ing] the testimony of [the chief] regarding the information contained in the December 23, 2020 affidavit filed by [Perdomo's wife] and[] the public safety concerns it raised." The judge found "that [the chief] has articulated a reasonable ground for his decision not to reinstate [Perdomo's] LTC." She therefore affirmed the chief's decision "denying Mr. Perdomo reinstatement of his LTC." On certiorari review, the Superior Court affirmed the District Court's judgment. This appeal followed.

Discussion. 1. Governing law. Under both the 2018 and 2021 versions of § 131 (f), an LTC "shall be revoked or suspended by the licensing authority" -- here, the chief -- "upon the occurrence of any event that would have disqualified the holder from being issued such license" and "may be revoked or suspended . . . if it appears that the holder is no longer a suitable person to possess such license."[11] G. L. c. 140, § 131 (f), as amended through St. 2018, c. 123. A

---

[11] The 2022 version of § 131 (f) makes revocation or suspension mandatory upon a determination that the holder is no longer suitable. G. L. c. 140, § 131 (f), as amended through St. 2022, c. 175.

8

holder is "disqualified," i.e., is a "prohibited person," if the holder, among other things, "is currently subject to . . . a permanent or temporary protection order issued pursuant to . . . chapter 209A."  Id., § 131 (d) (vi) (B).  And,

> "[a] determination of unsuitability shall be based on: (i) reliable and credible information that the applicant or licensee has exhibited or engaged in behavior that suggests that, if issued a license, the applicant or licensee may create a risk to public safety; or (ii) existing factors that suggest that, if issued a license, the applicant or licensee may create a risk to public safety."[12]

Id., § 131 (d).  "Upon revoking or suspending a license based on a determination of unsuitability, the licensing authority shall notify the holder of a license in writing setting forth the specific reasons for the determination."  Id.  That an event is not (or is no longer) disqualifying does not bar the licensing authority from considering that event and the surrounding circumstances on the issue of unsuitability.  See Chief of Police of Worcester v. Holden, 470 Mass. 845, 856 (2015); Chief of Police of Wakefield v. DeSisto, 99 Mass. App. Ct. 782, 785 (2021).

---

[12] The 2022 version of § 131 (d) provides that the determination shall be based on "reliable, articulable and credible information that the . . . licensee has exhibited or engaged in behavior that suggests that . . . [the] licensee may create a risk to public safety or a risk of danger to self or others."  G. L. c. 140, § 131 (d), as amended through St. 2022, c. 175.

9

An aggrieved holder may seek judicial review in District Court, and if the judge "after a hearing . . . finds that there was no reasonable ground for . . . suspending . . . the license and that the petitioner is not prohibited by law from possessing a license, the [judge] may order a license to be . . . reinstated."  G. L. c. 140, § 131 (f), as amended through St. 2018, c. 123.  The judge "may not second guess the licensing authority's decision to take one reasonable action over another" (quotation omitted).  Chief of Police of Wakefield, 99 Mass. App. Ct. at 786.

On appeal, we apply the same standard of certiorari review as the Superior Court; we "examine the record of the District Court . . . to correct substantial errors of law apparent on the record adversely affecting material rights" (quotation omitted).  Chief of Police of Wakefield, 99 Mass. App. Ct. at 784-785.  We give no special weight to the Superior Court decision.  See Doe v. Superintendent of Sch. of Stoughton, 437 Mass. 1, 5 (2002).

2.  Perdomo's claims of error.  a.  Claim and issue preclusion.  Perdomo first argues that, because the chief issued him a license in 2019, the doctrines of claim preclusion and issue preclusion barred the chief from determining in 2021 that Perdomo was at that time unsuitable.  We may assume for purposes of argument the doubtful proposition that the chief's 2019 licensing decision was a "final order of an administrative

10

agency in an adjudicatory proceeding" that could have preclusive effect against the parties in some other proceeding. Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 135 (1998), quoting Stowe v. Bologna, 415 Mass. 20, 22 (1993). But even if the licensing decision was made in an adjudicatory proceeding, the chief was not a party to that proceeding; he was the adjudicator. And, "[i]n the absence of statutory limitations, administrative agencies generally retain inherent authority to reconsider their decisions." Moe v. Sex Offender Registry Bd., 444 Mass. 1009, 1009 (2005).

Furthermore, even if the chief were viewed as subject to preclusive effect based on his own earlier decision, neither claim preclusion nor issue preclusion would benefit Perdomo here. Claim preclusion "bars further litigation of all matters that were or should have been adjudicated in the [earlier] action." Heacock v. Heacock, 402 Mass. 21, 23 (1988). But whether the December 2020 physical assault on Perdomo's wife described in her affidavit rendered Perdomo unsuitable was not and could not have been litigated or considered in the course of the chief's 2019 licensure decision, because the claimed assault had not yet occurred. Similarly, issue preclusion applies only where, among other things, the issue "actually was litigated and determined . . . and . . . the determination was essential to the decision in the prior action." Id. at 25. Here, whether

11

the December 2020 assault rendered Perdomo unsuitable was not considered in, let alone determined by and essential to, the 2019 licensure decision.

More generally, we think it plain that earlier events, such as Perdomo's history of domestic incidents with his former and current wives, can take on added significance in light of subsequent events, such as the 2020 physical assault.  The chief could reasonably view that assault as an indication that Perdomo's earlier behavior, including physical assaults in 2011 and 2017, was not abating with time but instead was continuing.  The 2018 and 2021 versions of § 131 (f) provide that "[a] license may be revoked or suspended by the licensing authority if it appears that the holder is no longer a suitable person to possess such license."  G. L. c. 140, § 131 (f), as amended through St. 2018, c. 123.  The 2022 version makes such action mandatory.  See supra note 11.  This language plainly authorizes a police chief to reconsider a prior suitability determination, and it does not restrict that reconsideration to only those events occurring or becoming known after the LTC was issued.  See Moe, 444 Mass. at 1009.  The unsuitability determination must take into account whether an applicant or licensee poses "a risk to public safety," G. L. c. 140, § 131 (d), as amended through St. 2018, c. 123, or, as of 2022, "a risk of danger to self or others."  Id., as amended through St. 2022, c. 175.  See

12

*supra* note 12. To read into the statute a limitation on what information a chief may review in determining unsuitability would frustrate the statute's public safety and protective purposes.

In sum, under the 2018 and 2021 versions in effect when the chief made his decision and the District Court upheld it, the chief had "(i) reliable and credible information that the . . . licensee has exhibited or engaged in behavior that suggests that . . . [the] licensee may create a risk to public safety," i.e., that Perdomo was "unsuitable." G. L. c. 140, § 131 (d), as amended through St. 2018, c. 123. If we were to apply the 2022 version, the chief also had such information regarding, at a minimum, Perdomo's risk of danger to others. Indeed, Perdomo acknowledged at oral argument that, putting aside his procedural and constitutional arguments, the information in his wife's affidavit was sufficient to support the determination of unsuitability. The District Court judge therefore properly determined that the chief had a "reasonable ground" for not reinstating the LTC. Id., § 131 (f).

b. Chief's second letter. Perdomo nevertheless insists that the chief had no authority to issue his second letter, which stated that Perdomo's LTC remained suspended because his record of domestic incidents made him "presently unsuitable for reinstatement." Perdomo relies on the requirement that "[u]pon

13

revoking or suspending a license based on a determination of unsuitability, the licensing authority shall notify the holder of a license in writing setting forth the specific reasons for the determination."  G. L. c. 140, § 131 (d), as amended through St. 2018, c. 123.  See id., § 131 (f) ("Any revocation or suspension of a license shall be in writing and shall state the reasons therefor").  Perdomo argues that this language makes no provision for, and thus implicitly prohibits, the chief's issuance of a second letter stating additional reasons for a license suspension.  Thus, Perdomo claims, the District Court judge, in reviewing the chief's decision, was limited to considering the chief's original letter.

What Perdomo overlooks is that the chief made two decisions, at separate times, and he issued a separate letter in support of each.  He issued one letter suspending the LTC based on the pending c. 209A order, a mandatory disqualification for an LTC.  After that order lapsed, he issued a second letter, declining Perdomo's request to reinstate the LTC, based on the chief's determination that Perdomo was unsuitable.  Only the second decision was based on unsuitability, and it is only the second decision that Perdomo challenges here.

This court rejected an argument similar to Perdomo's in Chief of Police of Shelburne v. Moyer, 16 Mass. App. Ct. 543 (1983).  In that case, a police chief denied an LTC application,

14

relying in his initial letter on a mandatory disqualifying factor: the applicant's conviction for possessing a controlled substance. Id. at 544. The conviction, however, had been sealed. Id. A week after his initial letter, the chief sent a second letter stating, as additional grounds for the denial, that he had determined based on "factors surrounding [the applicant's] arrest and conviction" that the applicant was "not a proper person to carry firearms" under § 131. Id. Section 131 at that time authorized issuance of an LTC if the applicant was not otherwise disqualified and appeared to be a "suitable person." Id. at 545.

On judicial review, a District Court judge ruled that the conviction, having been sealed, could not be considered a disqualification, and so the judge ordered the chief to issue the LTC. Chief of Police of Shelburne, 16 Mass. App. Ct. at 545. On appeal, we held that such an order was premature, because the judge had not yet considered the chief's determination that the applicant was unsuitable. Id. at 545-546. "In the absence of a finding that no reasonable ground existed for [the chief's unsuitability determination], the judge was in error in ordering the issuance of the" LTC. Id.

The principle underlying Chief of Police of Shelburne applies here. In both cases, even after the originally stated mandatory disqualifying factor was determined not to support any

15

(or any further) denial of licensure, the District Court judge was also required to review the chief's decision that the person was not suitable for licensure. See Chief of Police of Shelburne, 16 Mass. App. Ct. at 545-546.

We reject Perdomo's further argument that, because the chief's second letter was not issued until after Perdomo sought judicial review, it was an improper effort to "shore up the[] case," was "innately arbitrary and capricious," was "retaliat[ory]," "inherently illogical," and should not have been considered. Once the c. 209A order lapsed, Perdomo had applied for reinstatement of his LTC, but it appears that as of two months later the chief had not yet responded, and so Perdomo filed his District Court complaint, asserting that the chief had "failed to re-assess [Perdomo's] suitability after the [c. 209A order] was terminated." Although it might have been desirable for the chief to respond more promptly, § 131 by its terms did not require him to respond within any particular time, and he responded the day after Perdomo filed suit.[13] Perdomo offers no evidence to support his allegations of improper motivation and no explanation of how the timing of the letter conflicted with § 131's language or purpose or prejudiced him.

---

[13] In contrast, G. L. c. 140, § 131 (e) (all relevant versions, see note 3, supra), requires, with one exception, that an LTC application be approved or disapproved within forty days.

16

3. _Constitutional claims_. Perdomo also argues that § 131, on its face and as applied, violates the Second Amendment to the United States Constitution as interpreted in United States v. Rahimi, 144 S. Ct. 1889 (2024), and New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022). He did not raise such arguments in the District Court, or for that matter the Superior Court, and therefore the arguments are waived. See Albert v. Municipal Court of Boston, 388 Mass. 491, 493-494 (1983). The single passing reference to the Second Amendment in Perdomo's twenty-one page District Court memorandum of law was insufficient. See Chelsea Hous. Auth. v. McLaughlin, 482 Mass. 579, 584 (2019), quoting Nelson v. Adams USA, Inc., 529 U.S. 460, 469 (2000) ("[waiver] principle . . . requires that the lower court be fairly put on notice as to the substance of the issue").

Moreover, Perdomo failed to notify the Attorney General of any constitutional claims while the case was in the District Court, so as to give the Attorney General an opportunity not only to defend the constitutionality of the statute but also to make any factual record necessary to such a defense. See Mass.

17

R. Civ. P. 24 (d), 365 Mass. 769 (1974).[14]  For this additional reason, we decline to reach Perdomo's constitutional claims.

Conclusion.  The District Court correctly declined to disturb the chief's decision.  The judgment of the Superior Court, upholding the District Court's judgment, is therefore affirmed.

Judgment affirmed.

By the Court (Sacks, Ditkoff & Toone, JJ.[15]),

Clerk

Entered: September 23, 2024.

---

[14] Cf. G. L. c. 231A, § 8 (requiring notice to Attorney General of certain constitutional claims raised in declaratory judgment actions); Mass. R. A. P. 10 (a) (4), as appearing in 481 Mass. 1618 (2019) (requiring notice to Attorney General of certain constitutional claims raised in civil appeals).

[15] The panelists are listed in order of seniority.